WEAVER, APPELLEE, *v.* WEAVER,
APPELLANT.

(No. 1351 — Decided
December 16, 1987.)

*Ed Rhoades,* for appellee.
*Bunstine, Moore, Corzine & Bunch*
and *William J. Corzine III,* for appellant.

STEPHENSON, J. This is an appeal from a judgment entered by the Ross County Court of Common Pleas overruling the second branch of a three-part motion by Dolly E. Weaver, defendant below and appellant herein. The aforesaid motion was brought by appellant following divorce proceedings to have plaintiff below and appellee herein, John E. Weaver, held in contempt for his failure to comply with a provision in the divorce decree which required appellee to be solely responsible for all payments on a Pontiac Firebird automobile and to save the appellant harmless therein.

Appellant assigns the following error:

"The Court erred in overruling the Motion of Defendant-Appellant to cite Plaintiff-Appellee for contempt for failure to pay the outstanding debt on the Pontiac Firebird automobile."

The pertinent facts adduced from the record, including the transcript of proceedings of the motion in issue, are basically not in dispute. The appellee filed a complaint for divorce on October 24, 1984, which was answered and a cross-claim was filed by appellant on December 3, 1984. The appellee withdrew his complaint and allowed appellant to proceed uncontested when this cause came on to be heard on April 1, 1985. The parties on that date entered into an agreement which provided, *inter alia,* that the appellee was to be solely responsible for the indebtedness on the Pontiac Firebird automobile and would save the appellant harmless thereunder. This provision was accepted by the court as fair and equitable and incorporated into the judgment entry decree of divorce which was filed on May 16, 1985.

Between the time of the April 1, 1985 initial agreement on the aforementioned automobile loan and the May 16, 1985 judgment entry decree of divorce, the appellant and appellee jointly borrowed the sum of $14,309.52 from Credithrift of America, Inc. The loan, apparently a consolidation loan, had the proceeds disbursed in the following manner: $9,378.03 was used to pay on a prior account with Credithrift; $2,490.54 was disbursed to Citi-Corp., the creditor on the Firebird automobile loan; and $1,211.91 was apparently paid to the parties. This latter sum was to be given to the parties' daughter so she could purchase another automobile, according to the

testimony. The loan agreement and mortgage were signed by both appellant and appellee.

The appellant testified she did not realize that she had signed a mortgage or loan agreement in the amount of $14,309.52 until the mortgaged marital residence was sold on or about August 15, 1985. Appellant claims that she only signed the loan to enable their daughter to purchase the automobile. Appellant further testified at the hearing that she did not realize that part of the proceeds from the loan by Credithrift was used for repayment of the Firebird loan.

Gregory Kaufman, the manager of Credithrift of America, Inc., testified that the loan agreement and mortgage were explained to appellant before she signed the documents. Kaufman additionally testified that the disbursement of the proceeds, including the Firebird loan repayment to Citi-Corp., were explained to appellant. Appellant concedes that her signature appears on a copy of the note with Credithrift. Additionally, the note identifies and enumerates all the disbursements to be made from the new loan including the payment of $2,490.54 to Citi-Corp. The note to Credithrift was paid on August 16, 1985 after the marital residence was sold.

On May 16, 1986, appellant filed a multi-part motion. The second branch, the one in issue in this appeal, sought to invoke the contempt powers of the court for appellee's failure to comply with the court order of May 16, 1985, which ordered appellee to be solely responsible for the payment of the Firebird automobile loan. In denying the second branch of appellant's motion, the court found that the motion was not timely filed, but even assuming *arguendo* that the motion was filed within a reasonable time, the court found that appellant had entered into a different arrangement with appellee whereby a new mortgage was taken out on the former marital residence and the proceeds were disbursed in accordance with the note to Credithrift. The appellant appealed the trial court's dismissal of the second branch of her motion seeking to hold appellee in contempt for violating the divorce agreement.

Although there is a discrepancy between the briefs of appellant and appellee on when the final hearing and agreement were reached, appellant asserting April 1, 1985 and appellee April 11, 1985, the record reflects that the final hearing and agreement were on April 1, 1985. While the journal entry also refers to the hearing of April 11, 1985, all other documents relating to this hearing, including the precipe for subpoena and certificate for court stenographer fees, indicate that the hearing was held on April 1, 1985. The significance of the date of this hearing is important for the purpose of establishing the chronology of events in this appeal.

The appellant asserts that the appellee should be cited for contempt for violating the judgment entry decree of divorce. The alleged contemptuous act, paying off the car loan with the joint loan taken out on April 1, 1985, occurred after the time the separation agreement was reached and approved by the court but before the final divorce decree was filed on May 16, 1985. A property settlement provision contained in a separation agreement which is subsequently incorporated into a divorce decree is enforceable by contempt proceedings. *Harris* v. *Harris* (1979), 58 Ohio St. 2d 303, 12 O.O. 3d 291, 390 N.E. 2d 789; Baldwin's Ohio Domestic Relations Law (1987) 215-216, Section T 19.09. The relevant provision of the separation agreement, payment of the automobile loan solely

by appellee, was incorporated into the judgment entry by the trial court. Therefore, the court could hold appellee in contempt if it found that the appellee failed to comply with the separation agreement.

The issue then becomes whether a new agreement between appellant and appellee as evidenced by the Credithrift loan constituted a waiver of appellant's right to have appellee solely responsible for repayment of the loan on the Firebird. We conclude that the new loan, in light of the surrounding circumstances, did constitute a waiver by appellant of this particular provision of the separation agreement for the following reasons.

"The essential elements of a waiver are an existing right, benefit, or advantage; knowledge, actual or constructive, of the existence of such right, benefit, or advantage; and an actual intention to relinquish it or an adequate substitute for such intention." 31 Corpus Juris Secundum (1964) 408, Estoppel, Section 67(2); See, also, 28 American Jurisprudence 2d (1966) 836, Estoppel and Waiver, Section 154; *Parente* v. *Day* (1968), 16 Ohio App. 2d 35, 45 O.O. 2d 104, 241 N.E. 2d 280. Manifestly, the appellant had both a right and knowledge of the right. Such provision in the separation agreement that appellee pay the car loan is a benefit to appellant agreed upon during the course of reaching a separation agreement. Additionally, appellant never asserted a lack of knowledge of this contract right, but rather claims that she never intended or realized that she had waived the right by the new agreement.

The final element requires relinquishment of the right either expressly or impliedly by acts or conduct. *List & Son Co.* v. *Chase* (1909), 80 Ohio St. 42, 88 N.E. 120; *Meyers* v. *Hoops* (App. 1957), 74 Ohio Law Abs. 280, 284, 12 O.O. 2d 481, 484, 140 N.E. 2d 65, 68. In the case *sub judice,* appellant impliedly waived her right to have appellee be solely responsible for the car loan thereunder by entering into the new loan which discharged the car loan. Additionally, there was testimony by a disinterested third party, the manager of Credithrift, that the proceeds, at least in part, would be used for payment of the car loan. The fact that appellant signed the note which contained an express provision for paying off the balance owed on the Firebird to Citi-Corp is indicative of such waiver.

Finally, there was the requisite consideration required for a waiver based on an agreement. *Parente, supra.* Appellant and appellee incurred a new obligation in the amount of $1,211.91 which both parties testified would be used, at least in part, for the purchase of a car for their daughter. This new obligation provided consideration to support an agreement to waive the prior automobile loan repayment provision reflected in the separation agreement.

For the foregoing reasons, the appellant's sole assignment of error is overruled and the judgment is affirmed.

*Judgment affirmed.*

GREY, P.J., and ABELE, J., concur.