[Cite as *Polk v. Polk*, 2012-Ohio-2968.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

DEAN R. POLK                          :

    Plaintiff-Appellee/              :   C.A. CASE NO.    24882
    Cross-Appellant

v.                                    :   T.C. NO.    02DR159

MARY BETH POLK (McIntosh)             :   (Civil appeal from Common
                                          Pleas Court, Domestic Relations)

    Defendant-Appellant/            :
    Cross-Appellee

                                      :

. . . . . . . . . .

## O P I N I O N

Rendered on the ___29th___ day of ___June___, 2012.

. . . . . . . . . .

STEPHEN E. KLEIN, Atty. Reg. No. 0014351, 240 Bohanan Drive, Vandalia, Ohio 45377
    Attorney for Plaintiff-Appellee/Cross-Appellant

JENNIFER L. BROGAN, Atty. Reg. No. 0075558, 400 PNC Center, 6 N. Main Street,
Dayton, Ohio 45402
    Attorney for Defendant-Appellant/Cross-Appellee

. . . . . . . . . .

FROELICH, J.

{¶ 1} Mary Beth Polk, now known as Mary Beth McIntosh, appeals from a

judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which found her in contempt for failure to provide parenting time in the summer of 2010 to her former husband, Dean Polk, as ordered by the court. Mr. Polk filed a cross-appeal, arguing that the trial court mistakenly ordered him to pay Mrs. Polk's attorney fees in the amount of $350 in connection with the motion for contempt, when a local rule requires that the movant be awarded such fees.

{¶ 2} We conclude that the trial court did not abuse its discretion in finding Ms. McIntosh in contempt, and that it mistakenly ordered Mr. Polk to pay attorney fees to Ms. McIntosh.

### *Facts and Procedural History*

{¶ 3} The parties were divorced in 2003, and Ms. McIntosh was named the residential parent of their children. During the summer, Mr. Polk's parenting time was to be in accordance with Montgomery County's Standard Order of Parenting Time, which provides that "[t]he non-residential parent shall have parenting time for five weeks (35 days) each summer," to be taken in increments of not more than two weeks and not less than one week. The Standard Order further provides that the non-residential parent "shall give the residential parent written notice of summer parenting time plans between March 1 and April 1 each year." Further, the non-residential parent "has priority of choice of summer parenting time dates if notice is given as required," unless a particular exception applies, which is not at issue in this case.

{¶ 4} The parties also filed two agreed orders related to parenting time that are relevant to this appeal. In December 2007, they filed an agreed order that required Mr. Polk

to "get the children to all future [extracurricular] activities timely," in exchange for which Ms. McIntosh agreed to withdraw a motion for contempt based on his failure to get the children to such activities. In April 2008, the parties entered into another agreed entry, which provided that Ms. McIntosh would provide Mr. Polk with a schedule of the children's practices and games and that, if the children were involved in extracurricular activities outside a fifty-mile radius of Dayton, Mr. Polk "may opt out of transporting the children" to those activities, and Ms. McIntosh "may transport the children to said events."

{¶ 5}     In the spring of 2010, Mr. Polk informed Ms. McIntosh of the five weeks during which he intended to exercise visitation with the children that summer, as required by the standard order; these times included August 2 through August 16, 2010. Shortly after he made this request, the parties' older daughter informed her father that she was going to Florida for a diving competition during the week of August 2. In response, in early May 2010, Mr. Polk sent a letter to Ms. McIntosh requesting that his visitation time be rescheduled from the week of August 2 to the week of July 26 through August 1. Mr. Polk later indicated that the third week of August could also serve as his makeup time. Meanwhile, Ms. McIntosh sent a letter to Mr. Polk, through their attorneys, advising that she would exercise her two weeks of summer parenting time from July 19 through July 26 and August 16 though August 23, 2010.

{¶ 6}     Mr. Polk learned on July 25, from his daughter, and on July 28, from Ms. McIntosh's attorney, that the week of July 26 was not acceptable to Ms. McIntosh for Mr. Polk's parenting time with the children, because Ms. McIntosh had family visiting from Alaska during that time. Ms. McIntosh had scheduled her own vacation during the third

week of August (the other alternate week proposed by Mr. Polk). Ms. McIntosh took the older daughter to Florida for the competition during the week of August 2, and Mr. Polk visited with his other daughter during that time. Mr. Polk did not get a fifth week of visitation with the older daughter during the summer of 2010.

{¶ 7}     The trial court found that Ms. McIntosh was in contempt of its visitation order for failing to provide Mr. Polk with an additional week of visitation with their older daughter in the summer of 2010. It sentenced Ms. McIntosh to three days in jail, which could be purged if Ms. McIntosh provided Mr. Polk "with make-up parenting time of one week in the summer of 2012." The court also ordered Mr. Polk to pay attorney fees in the amount of $350 to Ms. McIntosh.

{¶ 8}     Ms. McIntosh raises one assignment of error on appeal, and Mr. Polk raises one assignment on cross-appeal. Ms. McIntosh's assignment states:

> **The Domestic Relations Court erred when, in the absence of a court order requiring make up parenting time, it held Mary Polk (nka McIntosh) in contempt of court for failure to provide Dean parenting time.**

{¶ 9}     Ms. McIntosh claims that the trial court erred in finding her in contempt because her actions did not violate the express language of the court's order.

*Applicable Law and Standard of Review*

{¶ 10}     Contempt of court is defined as "disobedience of an order of a court * * * which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v.*

*Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus; *Fischer v. Fischer*, 2d Dist. Clark No. 11 CA 81, 2012-Ohio-2102, ¶ 10. To support a finding of contempt, the moving party must establish by clear and convincing evidence that a valid court order exists, that the offending party had knowledge of the order, and that the offending party violated such order. *Arthur Young & Co. v. Kelly*, 68 Ohio App.3d 287, 295, 299, 588 N.E.2d 233 (10th Dist.1990); *Underleider v. Underleider*, 12th Dist. Clermont Nos. CA2010-09-069, CA2010-09-074, 2011-Ohio-2600. ¶ 36. "Clear and convincing evidence" is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Ohio State Bar Assn. v. Reid*, 85 Ohio St.3d 327, 331, 708 N.E.2d 193 (1999).

{¶ 11} R.C. 2705.031(B)(2) permits a trial court to punish a residential parent for any act which interferes with the court's visitation order. Depending on the facts of the case, contempt may be excused with actual or substantial compliance, but the Supreme Court of Ohio has rejected the argument that substantial compliance with a court order automatically precludes a finding of contempt. *Geiser Durst v. Durst*, 3d Dist. Seneca No. 13-02-38, 2003-Ohio-2029, ¶ 18, citing *State ex rel Celebreeze v. Gibbs*, 60 Ohio St.3d 69, 75, 573 N.E.2d 62 (1991). "Substantial compliance will not shield a disobedient party who is able to comply with a court's order from contempt sanctions." *Id.* "A party must take all reasonable steps within [his or] her power to comply with the court's order." *Briggs v. Moelich*, 8th Dist. Cuyahoga No. 97001, 2012-Ohio-1049, ¶ 15, citing *LaHoud v.*

*Tri-Monex, Inc*., 8th Dist. Cuyahoga No. 96118, 2011-Ohio-4120, ¶ 54.

{¶ 12}    An appellate court will not reverse a trial court's finding of contempt absent an abuse of discretion.  *Willis v. Willis*, 149 Ohio App.3d 50, 2002-Ohio-3716, 775 N.E.2d 878, ¶ 59, citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d  10, 11, 417 N.E.2d 1249 (1981).  A trial court abuses its discretion when its attitude is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

### *Finding of Contempt*

{¶ 13}    Ms. McIntosh claims that, reading the court's visitation order in conjunction with the parties' agreed orders, there was no basis for the trial court to conclude that she violated the court's order and that she should not have been found in contempt.

{¶ 14}    In finding Ms. McIntosh in contempt, the trial court observed that the agreed entry which allowed Mr. Polk to "opt out of transporting the children" to extracurricular activities more than fifty miles from Dayton "did not give Ms. McIntosh the ability to waive that parenting time."   The court also observed that, although Mr. Polk had contacted Ms. McIntosh in the spring about the conflict between their daughter's diving competition and his summer visitation weeks, suggesting the week of July 26 as an alternative, Ms. McIntosh did not respond to this request until July 28.   The court also questioned Ms. McIntosh's "defense for her inability to provide make-up parenting time" due to having relatives visiting from out-of-state, because she acknowledged that those relatives had arrived in the middle of the month, so they had a week to see the children before the proposed visitation would have begun.

{¶ 15}    Ms. McIntosh essentially asserts that, if Mr. Polk opts out of transporting a

child to an extracurricular activity that occurs during his parenting time, she may take the child to the activity and, in doing so, Mr. Polk waives his parenting time. We find no support for this interpretation in the parties' agreements or the court's order. Although Mrs. McIntosh correctly asserts that the agreements and order also do not provide for make-up parenting time, the trial court reasonably concluded that Ms. McIntosh's unwillingness to cooperate or show flexibility in allowing Mr. Polk to reschedule his summer visitation in light of the out-of-state diving competition, and poor communication violated the spirit of the court's order. Moreover, it did a disservice to Mr. Polk and to their daughter. The trial court did not abuse its discretion in finding Ms. McIntosh in contempt and in ordering her to provide Mr. Polk with an additional week of visitation with their older daughter in order to purge the contempt.

{¶ 16} Ms. McIntosh's assignment of error is overruled.

{¶ 17} Mr. Polk's assignment on cross-appeal states:

**The trial court erred in awarding attorney fees to Defendant and not to Plaintiff.**

{¶ 18} Mr. Polk asserts that, pursuant to Montgomery D.R.Rule 4.27(B), Ms. McIntosh should have been ordered to pay attorney fees related to the motion for contempt; he contends that the court erred in its order, which required "Defendant," Mr. Polk, to pay attorney fees. Ms. McIntosh has not responded to this argument.

{¶ 19} Montgomery D.R.Rule 4.27(B) provides:

> The court may award attorney fees, costs, and other expenses of suit to a successful moving party in any enforcement action, regardless of the

moving party's own ability to pay such expenses. Such an award is mandatory in any contempt action involving child support, parenting time, or spousal support. [Internal citations omitted.]

{¶ 20} Pursuant to this rule, Ms. McIntosh, the respondent and the party found in contempt, should have been ordered to pay attorney fees. It appears that the trial court inadvertently named the incorrect party; we will reverse this portion of the judgment and remand to the trial court for it to correct this portion of its decision.

{¶ 21} Mr. Polk's assignment of error on cross-appeal is sustained.

{¶ 22} The trial court's finding of contempt will by affirmed. Its award of attorney fees to Ms. McIntosh will be reversed, and the matter will be remanded to the trial court for   it to correct the order related to payment of attorney fees.

. . . . . . . . . .

FAIN, J. and CANNON, J., concur.

(Hon. Timothy P. Cannon, Eleventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Stephen E. Klein
Jennifer L. Brogan
Hon. Timothy D. Wood